**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE THE SCOTTS MIRACLE-GRO COMPANY SECURITIES LITIGATION | Case No.: 2:24-cv-03132-ALM-CMV<br><br>Judge Algenon L. Marbley<br><br>Magistrate Judge Chelsey M. Vascura |

**LEAD PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**EXHIBIT**

**A**

## TABLE OF CONTENTS

I.    ARGUMENT ................................................................................................................1

       A.    The Sixth Circuit's Decision In *Lim* Did Not Alter Well-Settled Standards For Taking Judicial Notice, Nor Did It Redefine "Hard" Information ................... 1

       B.    The Sixth Circuit's Decision In *Lim* Does Not Impact The Temporal Proximity Analysis (*Helwig* Factor 3) Supporting Scienter ................................... 6

II.    CONCLUSION ...........................................................................................................7

Lead Plaintiffs respectfully submit this Sur-Reply principally to address arguments made in Defendants' Reply in support of their motion to dismiss the Complaint ("Reply," ECF No. 62) about the purported application of *Lim v. Hightower*, 2025 WL 2965692 (6th Cir. Oct. 21, 2025), a Sixth Circuit opinion issued after Lead Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint ("Opposition" or "Opp.," ECF 59).[1]

## I.    ARGUMENT

In their Reply, Defendants cite the Sixth Circuit's recent decision in *Lim*, issued several weeks after Lead Plaintiffs filed their Opposition on September 26, 2025, arguing *Lim* bolsters their request for the Court to take judicial notice of over sixty documents, offered for the truth of the matters asserted therein, and not to establish the mere fact of existence. Reply at 5-6. Indeed, Defendants contend that *Lim* effectively overrules, *sub silentio*, this Court's decision in *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *8 (S.D. Ohio Sept. 29, 2023) ("*Upstart*") with respect to all issues of judicial notice. Reply at 5, n.3. Defendants also argue that *Lim* created a narrower definition of what constitutes "hard information" in the Sixth Circuit for purposes of deciding whether an alleged misstatement is actionable. These arguments are wrong.

### A.    The Sixth Circuit's Decision In *Lim* Did Not Alter Well-Settled Standards For Taking Judicial Notice, Nor Did It Redefine "Hard" Information

To start, *Lim*'s discussion of well-settled judicial notice principles is unremarkable and presents no fundamental change to pre-existing law. At bottom, *Lim* affirmed established legal standards, holding the district court did not err when applying well-settled law to the specific facts of that case. In *Lim*, the alleged securities fraud concerned defendants' statements regarding the

---

[1] Unless otherwise defined, all capitalized terms have the same meanings given to them in the Opposition, all emphasis is added, and all internal citations and quotations are omitted.

strength of their company's partnership with Foxconn, a Taiwanese electronics manufacturing juggernaut, despite knowing that Foxconn planned to end the partnership. *Id.* at *1-3. In moving to dismiss plaintiffs' complaint, defendants sought to introduce, among other public documents, Foxconn's positive statements about the partnership. *Id.* at *4-5. Although these statements were indisputably public, plaintiffs objected to their consideration on a motion to dismiss because the documents characterized Foxconn's view of the partnership and not defendants' view. *Id.* The district court considered the Foxconn documents, over the objection, finding they established "the totality of information Foxconn communicated to defendants and how Foxconn positively portrayed the partnership to the public." *Id.* The Sixth Circuit concurred. *Id.* at *4. In doing so, the Sixth Circuit concluded that it was an appropriate use of judicial notice to consider the existence and content of Foxconn's public statements to establish the public record, not to decide whether any Foxconn statement was true. *Id.* This is wholly consistent with well-established precedent, including this Court's own view, as expressed in *Upstart* and numerous other cases.

Yet, Defendants incorrectly suggest otherwise. In a broadside attack on the Complaint, Defendants ask the Court to take judicial notice of statements made in publicly filed documents, not to merely establish what existed in the public record at the time, but rather for the truth asserted in Defendants' public statements, as a basis to contest the adequacy and veracity of Lead Plaintiffs' well-pleaded allegations. For example, Defendants argue that falsity, materiality, and scienter are lacking due to their "warnings" about risks related to supply chain issues and increased "upstream" costs caused by COVID, the Ukraine war, and inconsistent regulation and a glut of supply in the cannabis market. *E.g.*, Reply at 6. But what Defendants said in their "warnings" is undisputed. What is hotly contested—and what Defendants improperly ask this Court to determine as an adjudicative fact at the pleading stage—is that such factors in fact impacted Scotts' business

2

operations and financial performance, as well as the degree of those impacts. *See* MTD at 15 (arguing that "Russia's invasion of Ukraine…caused Scotts margins to suffer"); *id.* at 20 (claiming these unalleged factors "continued to hurt margins"); *id.* at 21 (asserting "supply chain costs continued to weigh on the Company…due in part to the negative impact of the war in Ukraine"). Indeed, Defendants seek judicial notice of their **warnings** about these external factors to negate the **occurrence** of fraud. *See* Reply at 27-29 (arguing that such factors "suggest[] an absence of fraud"). This is improper. *Upstart*, 2023 WL 6379810, at *8 (denying request for judicial notice of SEC filings as "an improper use of the documents" and noting judicial notice is proper only of "'a fact that is not subject to reasonable dispute'") (quoting Fed. R. Evid. 201(b)); *see also, e.g.,* *Hodges v. City of Grand Rapids*, 139 F.4th 495, 512 (6th Cir. 2025) (restrictions on judicial notice "generally allow[] a court to conclude only that the record exists; the exception does not allow the court to treat all information in the record as true").

Defendants have also asked the Court to take judicial notice of Scotts' revenue recognition policy, not for the fact of the policy's existence or its public disclosure, but rather for a finding that throughout the Class Period, the policy was both in use and the Company faithfully adhered to it. *See* MTD at 49 (arguing that the reported revenue was actually "reduced by estimates for" expected returns). In their Reply, Defendants cite *Lim* to suggest that the Sixth Circuit now requires the Court to accept the revenue recognition policy and statements made about it for their truth. Reply at 31 (arguing that Scotts disclosed its channel stuffing practices). *Lim* makes no such requirement.

Similarly, Defendants' contention that *Lim* now gives the Court *carte blanche* to consider Forms 4 reflecting Defendants' stock holdings to undermine the Complaint's scienter allegations is misguided. In *Lim*, the Sixth Circuit affirmed the district court's consideration of Forms 4 to refute allegations of insider trading because the plaintiffs' complaint made allegations regarding

insider trading to support their theory of fraud. In short, the Forms 4 were "incorporated by reference" into the complaint, which rendered the Forms 4 "plainly relevant to the scienter analysis." *Lim*, 2025 WL 2965692, at *5. Here, by contrast, the Complaint makes no reference to insider trading. Thus, the Forms 4 are certainly not incorporated by reference into the Complaint, and Defendants improperly ask the Court to judicially notice the Forms 4 for the purpose of contradicting factual allegations that were never made. Contrary to Defendants' argument, *Lim* does not require the Court to consider all publicly filed documents, including the Forms 4. The law is clear: judicial notice cannot be used to do anything more than establish the fact that a particular statement is in the public record—it is not a vehicle for deciding (or creating) contested issues of fact. [2] *See, e.g.*, *Hodges*, 139 F.4th at 512. That was the law before *Lim* and still is.

Similarly misguided is Defendants' footnote argument (Reply at 5, n.3) that *Lim* somehow overruled this Court's decision in *Upstart* with respect to any aspect of judicial notice and incorporation by reference. However, *Lim* never once mentions *Upstart*. Nor does *Lim* offer any indication that the Sixth Circuit intended to overturn, abrogate, or depart from in any way the well-established standards for judicial notice. The Sixth Circuit applied the same legal standard grounded in Fed. R. Evid. 201(b) this Court applied in *Upstart*, and cited cases applying that standard in the same way as this Court did in *Upstart*. *See Lim*, 2025 WL 2965692, at *4 (articulating judicial notice standards under Fed. R. Evid. 201(b) and twenty-year-old precedent). Accordingly, *Upstart* remains good law, and Defendants' suggestion otherwise is meritless.

_____

[2] Plaintiffs strongly dispute the non-culpable inference Defendants ask the Court to draw from their stock holdings. Opp. at 9-10, 82 (emphasizing that Defendants *"did not make a single open market purchase of Scotts stock during the entire Class Period"* but rather acquired all shares automatically as incentive compensation).

Finally, although the Reply seems to ignore it, *Lim* rejects Defendants' argument (Reply at 8) that the misstatements at issue in this case are merely statements of "soft information" that require Lead Plaintiffs to show Defendants had actual knowledge that the statements were false at the time they were made. Indeed, the Sixth Circuit in *Lim* reaffirmed the well-settled standard that "hard information … is typically historical information or other factual information that is **objectively verifiable**." 2025 WL 2965692, at *7 (*quoting In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 (6th Cir. 1997)). As the Sixth Circuit explained, any statements that "concern facts that can be verified," such as whether a meeting took place between two CEOs, are statements of hard information. *Id.* at 8-9. Accordingly, Defendants' suggestion (MTD at 25-26; Reply at 7-8) that financial and other concrete numbers are the only source of "hard" information is contrary to Sixth Circuit law, reaffirmed as recently as last month.[3] *Lim* neither announced a new standard for proper application of judicial notice nor did it redefine what constitutes "hard information" for purposes of setting the proper pleading standard for scienter.

---

[3] Contrary to Defendants' argument, Plaintiffs have not conceded that the alleged misstatements consist only of "soft" information, or that "the vast majority" of the statements Defendants suggest are opinions are not actionable. While the Opposition does not use the term "soft" information, it explains in detail that many of Defendants' misstatements are objectively verifiable (*i.e., not* "soft"). Opp. at 52-53 (citing examples). Similarly, while the Opposition does not separately address each of the 84 statements Defendants claim are not actionable because they are "opinions," (Reply at 35-36), the Opposition, applying Supreme Court precedent, describes three specific categories of actionable opinion statements and explains with examples how these so-called "opinions" "fit within these categories." Opp. at 54-55. This is sufficient. *See, e.g., Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 368–69 (E.D.N.Y. 2022) (rejecting argument that plaintiffs abandoned all statements they did not "separately address," where plaintiffs provided specific examples to illustrate why categories of statements are actionable in their response to a motion to dismiss). In any event, Plaintiffs need only plead a single actionable misstatement. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664 (6th Cir. 2005) (reversing dismissal as to a defendant based on one actionable statement).

**B.      The Sixth Circuit's Decision In *Lim* Does Not Impact The Temporal Proximity Analysis (*Helwig* Factor 3) Supporting Scienter**

Defendants' Reply also argues that *Lim* supports their arguments concerning *Helwig* factor 3: the temporal proximity of Defendants' misstatements to their corrective disclosures.  It does not.

Defendants incorrectly assume that *Lim* requires the Court to accept as true that Scotts' June 8, 2022 press release cannot have corrected any misstatements because it purportedly describes only facts the Company could not have known any earlier, namely, that Scotts "did not see the replenishment orders we expected from our retailer partners since ***mid-May***."  *See* Reply at 25 (emphasis in original).  But, as explained above, *Lim* did not undo decades of legal precedent regarding the appropriate use of judicially noticed facts (or those incorporated by reference) on a motion to dismiss.  Here, what and when Defendants learned about the true cause of declining sales is an intensely disputed fact issue that cannot be resolved on a motion to dismiss.  Lead Plaintiffs allege that by no later than January 2022, Defendants knew from a host of non-public information that a fundamental shift in consumer spending preferences was causing flagging sales—not "lousy weather" or a "combination of external factors," as Defendants' falsely represented on May 8, 2022.  ¶¶62-101, 177.  At best, the June 8, 2022 press release establishes only what the Company reported on that date—not whether the statements Scotts made in it were true.  As this Court has observed, "it is important to remember that courts may 'not consider the statements contained in [an SEC filing] for the truth of the matter asserted [ ] at the motion-to-dismiss stage.'" *Upstart*, 2023 WL 6379810, at *8 (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)).

Finally, Lead Plaintiffs acknowledge that Defendants' Reply accurately identifies an error in the Opposition that incorrectly placed two misstatements—"retailers are ordering heavy right now," and "there's no indication there's any sort of inventory at retail or with us that's an issue"—

6

as having been made on May 3, 2022, when they were actually made on February 1, 2022. Reply at 25. This error is not fatal to Lead Plaintiffs' temporal proximity argument. Other misstatements Defendants made on May 3, 2022 were also revealed to be untrue on June 8, 2022. *See, e.g.,* ¶¶142, 217-19 (false assurances that "the fundamentals of our business remain strong," "business is on a pretty good track right now," and "lousy weather" was to blame for disappointing sales in the early part of the growing season made approximately one month before Defendants' June 8, 2022 disclosure of huge declines in retailer replenishment orders during the second half of Q3 2022 and sharply reduced sales and earnings guidance for the full fiscal year). Thus, under *Helwig* Factor 3, the temporal proximity of Defendants' May 3, 2022 misstatements to the June 8, 2022 corrective disclosure continues to support scienter, even without consideration of the two statements Lead Plaintiffs acknowledge were made at an earlier time, on February 1, 2022.

## II.     CONCLUSION

For the reasons stated herein, Defendants' motion should be denied in its entirety.

Dated: November 26, 2025

Respectfully submitted,

By: */s/ Richard S. Wayne*

**STRAUSS TROY CO., LPA**
Richard S. Wayne, Attorney Bar No. 0022390
William K. Flynn, Attorney Bar No. 0029536
Robert R. Sparks, Attorney Bar No. 0073573
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Tel.: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
wkflynn@strausstroy.com
rrsparks@strausstroy.com

*Liaison Counsel for Lead Plaintiffs*

**SAXENA WHITE P.A.**
David R. Kaplan*
Emily Bishop*

7

505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
Email: dkaplan@saxenawhite.com
　　　ebishop@saxenawhite.com

Lester R. Hooker*
Jonathan Lamet*
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
Email: lhooker@saxenawhite.com
　　　jlamet@saxenawhite.com

Steven B. Singer**
Joshua H. Salzman**
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
Email: ssinger@saxenawhite.com
　　　jsaltzman@saxenawhite.com

**BARRACK, RODOS & BACINE**
Jeffrey A. Barrack**
Danielle M. Weiss*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838
E-mail: jbarrack@barrack.com
　　　dweiss@barrack.com

Stephen R. Basser*
Samuel M. Ward*
600 West Broadway, Suite 900
San Diego, CA 92101
Tel.: (619) 230-0800
Fax: (619) 230-1874
E-mail: sbasser@barrack.com
　　　sward@barrack.com

*Co-Lead Counsel for Lead Plaintiffs*

8

\* Admitted Pro Hac Vice
\*\* Pro Hac Vice Forthcoming