# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

In re The Scotts Miracle-Gro Company
Securities Litigation

Case No.: 2:24-cv-03132-ALM-CMV

Judge Algenon L. Marbley

Magistrate Judge Chelsey M. Vascura

## LEAD PLAINTIFFS' RESPONSE TO
## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Lead Plaintiffs respectfully submit this response to the Notice of Supplemental Authority ("NOSA," ECF 67) Defendants filed concerning *Newtyn Partners, LP v. Alliance Data Systems Corp.,* -- F.4th --, 2026 WL 161422 (6th Cir. Jan. 21, 2026) ("*Alliance Data Systems*") in purported support of their Motion to Dismiss the Consolidated Class Action Complaint.

Defendants improperly treat the NOSA as an opportunity to proffer further argument without first seeking leave of court.  Pursuant to L.R. 7.2(a), the Court should not consider the NOSA beyond the first two paragraphs on page 1 pertaining to permitted neutral information.[1]  As for the remainder of the NOSA, Defendants' use of bullet point, cherry-picked, and out-of-context excerpts linked with argument is a clear attempt to skirt Rule 7.2.  *Nokes v. Miami Univ.*, 2017 WL 3674910, at *7 & n.6 (S.D. Ohio Aug. 25, 2017) (distinguishing a proper NOSA from a supplemental brief, explaining a NOSA merely cites the recent authority, mentions the court's disposition, and "neutrally describes the case").  However, if the Court deems it proper to consider the arguments in Defendants' NOSA, Lead Plaintiffs submit the following short response.

### 1.  *Alliance Data Systems* Applies Settled Law To Wholly Dissimilar Facts

As the NOSA acknowledges (ECF 67 at PageID 1331), the Sixth Circuit's decision in *Alliance Data Systems* announces no new rule or test for deciding a motion to dismiss a complaint alleging violations of federal securities laws.[2]  The law is no different today than it was when the briefing was filed, and the analyses and holdings in *Alliance Data Systems* apply established law to the specific facts of that case—which, as noted below, are completely different than the facts alleged by Lead Plaintiffs here.

---

[1] The Court should also ignore the last sentence of the second paragraph as argumentative.

[2] Lead Plaintiffs' pending motion for leave to file a sur-reply in further opposition to Defendants' Motion to Dismiss (ECF 63) remains undecided; any germane argument advanced in the proposed sur-reply (ECF 63-1), if allowed, would also be included in "opposition arguments."

1

**2.** ***Alliance Data Systems'*** **Treatment Of Forms 4 Is Irrelevant to Plaintiffs' Scienter Theory, Which Is Not Based On "Motive and Opportunity"**

Defendants argue that *Alliance Data Systems* supports their request for judicial notice of Forms 4 concerning their transactions and holdings in Scotts' stock. NOSA at 1. In *Alliance Data Systems*, the Sixth Circuit found that judicial notice of "a corporate insider's stock purchases" was consistent with the plaintiff's theory of scienter, which "theorize[d] that defendants had motive and opportunity to defraud investors." 2026 WL 161422, at *12. That holding is irrelevant here. First, unlike *Alliance Data Systems*, Lead Plaintiffs' CAC does not make any allegations regarding Defendants' "motive and opportunity"; therefore, Defendants' stock holdings and the reasons for any changes thereto are irrelevant to Plaintiffs' scienter theory. CAC, ECF No.48 PageID 690-699, at ¶¶250-273, MTD Opp. ECF 59 at PageID 3207. Second, even if Defendants' personal financial stakes were relevant to Defendants' non-culpable explanations for their misstatements, unlike the defendants in *Alliance Data Systems*, Defendants here have not submitted any evidence that they made a single purchase of Scott's stock on the open market or otherwise during the Class Period, nor evidence that they took any affirmative, deliberate acts to increase their stock holdings during the Class Period.[3]

**3.** ***Alliance Data System*'s Doubts About Factual Allegations "Borrowed" From A Pleading In Another Legal Action Is Irrelevant To This Action**

Defendants next argue that *Alliance Data Systems* supports their argument that the Complaint fails to adequately allege scienter. NOSA at 2. However, *Alliance Data Systems'* application of established law to the facts of that case is wholly dissimilar to the scienter analysis presented in this case. There, the underlying complaint relied extensively on "borrowed snippets" from a parallel adversary complaint in a bankruptcy proceeding that merely detailed an "interested

---

[3] *E.g.*, MTD Opp., ECF 59 at PageID 3208.

party's spin on information," thereby coloring the Sixth Circuit's entire analysis. *See* 2026 WL 161422, at \*10 ("Newtyn's sweeping reliance on the adversary complaint alone thus deeply undermines its claim on scienter grounds"). Here, the Complaint does not rely on allegations from a third-party complaint. Instead, Lead Plaintiffs' Complaint details abundant, particularized facts and concrete data based on Lead Plaintiffs' independent investigation—including revelations of over a dozen former employees about regular internal reports, meetings, and meticulous tracking of key metrics, as well as explicit post-Class Period admissions by Defendants and analysts reports excoriating Defendants for repeatedly lying to investors.[4]

Furthermore, the complaint in *Alliance Data Systems* failed to allege that defendants there knowingly made false statements about the company's "deep, long-standing relationships" with customers, because although defendants were aware of ongoing issues with a key customer, that customer was still conducting business with the company and was actively involved in renewal negotiations at the time the statements were made. *Id.* at \*4, \*5, and \*9. The opposite is true here.[5]

    **4. The "Puffery Ubiquitous In The Corporate World" In *Alliance Data Systems* Are Nothing Like Defendants' Highly Specific Statements Here**

Finally, Defendants argue that *Alliance Data Systems* supports their argument that certain

---

[4] *E.g.*, ¶¶62-77 (internal reports and retailer point of sale data showing real-time declines in demand and rapidly rising inventories); ¶¶177, 183-186 (Defendants' admissions, including that Scotts' poor results were due to "pandemic-driven excess inventories" rather than "lousy weather" and other external factors, and that Scotts' nearly $2 billion cannabis-focused strategy "almost took us down" and was worth "zero, or less"); ¶¶144, 173-174, 182 (analyst excoriation of Defendants for repeatedly misleading investors and destroying "decades of earnings").

[5] *E.g.*, ¶¶108-09, 111-28, 177-79 (widespread customer resistance to Defendants' efforts to load them with excess inventory, which created the false appearance of demand and ultimately forced Scotts to buy-back product, report disappointing sales, and take millions in write-downs).

of their statements are inactionable.  NOSA at 3.  Again, however, *Alliance Data Systems* is entirely distinguishable as to the statements alleged to be false.  Certain statements about customer relationships in *Alliance Data Systems* were deemed to be "too general to have misled investors about" anything specific concerning issues with the company's key customer—particularly considering that the companies were actively negotiating.  2026 WL 161422, at *7 (noting that the customer loss was far from a "done deal").  In the instant matter, however, Lead Plaintiffs allege affirmative, highly specific misrepresentations about the level of customer demand for the Company's core products, the appropriateness of inventory levels to meet that demand, and the reasons for disappointing sales.[6]  Lead Plaintiffs also allege that Defendants' public statements directly contradicted concrete and contemporaneous information they knew of at the time.[7]  In sum, Defendants statements here are vastly different than the "vague" statements that did not create an affirmative duty to disclose problems with a single customer, and the "types of puffery ubiquitous in the corporate world," at issue in *Alliance Data Systems*.  *Id.* at *5.

Accordingly, the Sixth Circuit's analysis of scienter, falsity, and materiality in *Alliance Data Systems* has no application to the facts of this case.

Dated: February 18, 2026                    Respectfully submitted,

By: */s/ Richard S. Wayne*

**STRAUSS TROY CO., LPA**
Richard S. Wayne, Attorney Bar No. 0022390

---

[6] *E.g.*, ¶¶205, 215, 245 (assuring that "every cut of the data" shows that customers "stayed with" the Company after COVID lockdowns lifted, that "[r]etailers are ordering heavy right now[,] so there is no indication that there's any sort of inventory at retail or with us that's an issue," and that the Company was going to "exit this period of time, much, much stronger on the Hawthrone side" just months before Defendants admitted it was worthless).

[7] *E.g.*, ¶¶62-128 (describing internal reports of sharply declining customer sales and massively bloated inventories in both of Scotts' major segments, and fundamental changes in demand across virtually all of its products that started with the end of COVID lockdowns and were regularly brought to Defendants' attention as Scotts' business cratered).

William K. Flynn, Attorney Bar No. 0029536
Robert R. Sparks, Attorney Bar No. 0073573
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Tel.: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
wkflynn@strausstroy.com
rrsparks@strausstroy.com

*Liaison Counsel for Lead Plaintiffs*

**SAXENA WHITE P.A.**
David R. Kaplan*
Emily Bishop*
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
Email: dkaplan@saxenawhite.com
        ebishop@saxenawhite.com

Lester R. Hooker*
Jonathan Lamet*
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
Email: lhooker@saxenawhite.com

Steven B. Singer**
Joshua H. Salzman**
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
Email: ssinger@saxenawhite.com

**BARRACK, RODOS & BACINE**
Jeffrey A. Barrack**
Danielle M. Weiss*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838

5

E-mail:jbarrack@barrack.com
dweiss@barrack.com

Stephen R. Basser*
Samuel M. Ward*
600 West Broadway, Suite 900
San Diego, CA 92101
Tel.: (619) 230-0800
Fax: (619) 230-1874
E-mail: sbasser@barrack.com
sward@barrack.com

*Co-Lead Counsel for Lead Plaintiffs*

\* Admitted Pro Hac Vice
\*\* Pro Hac Vice forthcoming

6